## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **CLOUD CONTROLS LLC,**<br><br>Plaintiff,<br>**v.**<br><br>**AT&T INC., AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES, INC.,**<br><br>Defendants. | Case No.  2:25-cv-1246<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cloud Controls LLC ("CC" or "Plaintiff") files this Original Complaint for patent infringement against AT&T Inc., AT&T Enterprises, LLC, AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (collectively, "Defendants") alleging as follows:

## BACKGROUND AND NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.   This case asserts infringement of United States Patent Nos. 10,025,552 (the "'552 Patent"), 8,195,087 (the "'087 Patent"), 7,613,446 (the "'446 Patent"), 9,621,699 (the "'699 Patent"), 9,585,003 (the "'003 Patent"), and 7,167,703 (the "'703 Patent") (collectively, "the Patents-in-Suit").

2.      The Patents-in-Suit are owned by CC.

## THE PARTIES

3.      Cloud Controls LLC is a limited liability company filed under the laws of the State of Texas, with its principal place of business at 5900 Balcones Drive, Suite 100, Austin TX 78731.

4.      Defendant AT&T Inc. is a Delaware corporation with a principal place of business

at 208 S. Akard St., Dallas, Texas 75202.  Defendant AT&T Inc.'s registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

5.      Defendant AT&T Enterprises, LLC is a Delaware limited liability corporation with a principal place of business at 208 S. Akard St., Dallas, Texas 75202.  Defendant AT&T Enterprises, LLC's registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

6.      Defendant AT&T Mobility LLC is a Delaware limited liability corporation with a principal place of business at 1025 Lenox Park Blvd NE, Atlanta, Georgia 30319.  Defendant AT&T Mobility LLC's registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

7.      Defendant AT&T Mobility II LLC is a Delaware limited liability corporation with a principal place of business at 1025 Lenox Park Blvd NE, Atlanta, Georgia 30319.  Defendant AT&T Mobility II LLC's registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

8.      Defendant AT&T Services, Inc. is a Delaware corporation with a principal place of business at 208 S. Akard St., Dallas, Texas 75202.  Defendant AT&T Services, Inc.'s registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

9.      Defendants use, import into the United States, sell, and/or offer for sale in the United States the Accused Products, including at their retail stores in this district, such as (1) 701 N Central Expressway, Suite 400, Plano, Texas 75075 and (2) 2401 Preston Road, Suite B, Plano, Texas 75093.

## JURISDICTION AND VENUE

10.      This is an action for infringement of United States patents arising under 35 U.S.C.

§§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

11.    The Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.

12.    Defendants have regularly and systematically transacted business in Texas, directly or through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.

13.    Defendants have placed infringing products into the stream of commerce by selling those products in Texas at their retail locations, shipping those products into Texas or knowing that the products would be shipped into Texas.

14.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c). Venue is proper in this district under 28 U.S.C. §1400(b) because Defendants have regular and established places of business in this district and have committed acts of infringement in this district.

15.    On information and belief, Defendants have regular and established places of business in this district, including their retail stores in this district, such as (1) 701 N Central Expressway, Suite 400, Plano, Texas 75075 and (2) 2401 Preston Road, Suite B, Plano, Texas 75093.  Those locations are responsible for using, importing into the United States, selling, and/or offering for sale the Accused Products.

16.    Defendants use, sell, offer for sale, and/or import the Accused Products in this District.

17.    Defendants have also committed acts of infringement in this district by

commercializing, marketing, selling, distributing, and servicing the Accused Products.

## THE PATENTS-IN-SUIT

### The '552 Patent

18.     The '552 Patent, titled "Selective Locking of Input Controls of a Portable Media Player," was issued on July 17, 2018, and expires on January 8, 2028.  A copy of the '552 Patent is attached as Exhibit A.

19.     The claims of the '552 Patent are not directed to an abstract idea.  For example, claim 1 of the '552 Patent recites a system for the selective locking of user controls in a portable media player.  When enabled, the selective locking system prevents operation of input controls on the portable media player made by the user based on whether the device is in a locked state, as well as the individual operation mode.  In some embodiments, the portable media player can predictively or automatically select the lock state and individual operation mode.  Taken as a whole, the claimed inventions of the '552 Patent are not limited to well-understood, routine, or conventional activity.  For example, as the '552 Patent explains, conventional media player devices caused "many users [to] be undesirably restricted by current player locking mechanisms."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of portable media players.

20.     The written description of the '552 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21.     CC is the owner and assignee of all rights, title, and interest in and under the '552 Patent.

22.     CC has standing to sue for infringement of the '552 Patent.

**The '087 Patent**

23.     The '087 Patent, titled "Controlling of Wireless Connection of a Portable Device Including an Illuminating Component or Switch," was issued on June 5, 2012, and expires on January 8, 2028.  A copy of the '087 Patent is attached as Exhibit B.

24.     The claims of the '087 Patent are not directed to an abstract idea.  For example, claim 1 of the '087 Patent recites a system for connecting a portable media player with a wireless communications network.  The portable media player includes an actuator associated with an illumination component that is configured to communicate with a wireless communication component.  In some embodiments, the illumination component indicates a communications state of the wireless connection component via a mode of illumination.  Taken as a whole, the claimed inventions of the '087 Patent are not limited to well-understood, routine, or conventional activity.  For example, as the '087 Patent explains, "wireless connectivity is not established in most players" and "users may find it difficult to manage or properly utilize the wireless capabilities of a portable music player."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of portable media players.

25.     The written description of the '087 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.    The written description of the '087 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.    CC is the owner and assignee of all rights, title, and interest in and under the '087 Patent.

28.    CC has standing to sue for infringement of the '087 Patent.

**The '446 Patent**

29.    The '446 Patent, titled "Wireless Mobile Phone with Authenticated Mode of Operation Including Finger Print Based Authentication," was issued on November 3, 2009, and expired on June 2, 2025.  A copy of the '446 Patent is attached as Exhibit C.

30.    The claims of the '446 Patent are not directed to an abstract idea.  For example, claim 8 of the '446 Patent recites a method for authenticating a user to an apparatus based on the user's fingerprint, which is detected via an input mechanism on a power-on button.  Different functions of the device are available based on whether the user is successfully authenticated or not. Taken as a whole, the claimed inventions of the '446 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '446 Patent explains that "under the prior art, wireless mobile phones are at risk of unauthorized usage, as well as data being compromised by unauthorized accesses."  The claimed invention provides nonconventional devices and methods of preventing unauthorized usage and access.  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of mobile phones.

31.    The written description of the '446 Patent describes in technical detail each of the

6

limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '446 Patent.

32.    CC has standing to sue for infringement of the '446 Patent.

**The '699 Patent**

33.    The '699 Patent, titled "Mobile Digital Communication/Computing Device Having a Context Sensitive Audio System," was issued on April 11, 2017, and expired on October 14, 2023.  A copy of the '699 Patent is attached as Exhibit D.

34.    The claims of the '699 Patent are not directed to an abstract idea.  For example, claim 10 of the '699 Patent recites a mobile client device.  The mobile client device includes means for providing first and second audio signals at different audio volume levels.  The second audio volume level is non-intrusively lower than the first audio volume level initially, but increases to a discernable volume level higher than the first audio volume level until the user responds to the second audio signal.  Taken as a whole, the claimed inventions of the '699 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '699 Patent explains that mobile client devices at the time of the claimed inventions were only beginning to incorporate multimedia capabilities.  As a result, "the playing of the music may interfere with the delivery of a message alert for an incoming call and vice versa."   The claimed invention provides nonconventional devices and methods of providing "a more context sensitive way of notifying a user of an alert tone while an audio system is being utilized by multi-media resources."

Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of mobile client devices.

35.     The written description of the '699 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '699 Patent.

36.     CC has standing to sue for infringement of the '699 Patent.

**The '003 Patent**

37.     The '003 Patent, titled "Serving Data/Applications from a Wireless Mobile Phone," was issued on February 28, 2017, and expires on November 10, 2025.  A copy of the '003 Patent is attached as Exhibit E.

38.     The claims of the '003 Patent are not directed to an abstract idea.  For example, claim 1 of the '003 Patent recites a specific method for serving data or applications from mobile devices.  The mobile devices work with computing devices such as client computers, domain name servers, proxy servers, and other phones equipped with the technology to practice the method.  The method involves the mobile device establishing a data connection to a data network and a computing device locating the data or application on the mobile device, among other things.  Taken as a whole, the claimed inventions of the '003 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '003 Patent explains that the user's wireless mobile phones, domain name servers, and proxy servers implement nonconventional "logic and functions to bridge the fact that [the user's wireless mobile phone] generally does not have a persistent

connection to the Internet, nor a persistent IP address."  Accordingly, the claimed inventions include inventive components that improve upon the methods of serving data.

39.    The written description of the '003 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '003 Patent.

40.    CC has standing to sue for infringement of the '003 Patent.

**The '703 Patent**

41.    The '703 Patent, titled "Wireless Mobile Image Messaging," was issued on January 23, 2007, and expired on September 14, 2024.  A copy of the '703 Patent is attached as Exhibit F.

42.    The claims of the '703 Patent are not directed to an abstract idea.  For example, claim 1 of the '703 Patent recites a method of operation for a wireless mobile device capable of sending messages to another mobile device to facilitate communication between the users.  The method permits the user of the wireless mobile device to graphically convey information about the user, by, for example, selecting images from a plurality of images.  The wireless mobile device then transmits that image to the other wireless mobile device.  Taken as a whole, the claimed inventions of the '703 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '703 Patent explains that wireless mobile devices at the time of the claimed inventions had "limited input capabilities."  The claimed invention provides nonconventional devices and methods for "facilitating non-verbal communications between users of wireless mobile devices, such as cellular telephones, using image messages."  Accordingly, the claimed

inventions include inventive components that improve upon the functioning and operation of the sending and receiving of image messages between users of mobile devices.

43.    The written description of the '703 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention. CC is the owner and assignee of all rights, title, and interest in and under the '703 Patent.

44.    CC has standing to sue for infringement of the '703 Patent.

## GENERAL ALLEGATIONS OF PATENT INFRINGEMENT

45.     As detailed below and in the accompanying claim charts (Exhibits G-L), Defendants have infringed (and continues to infringe) one or more claims of the Patents-in-Suit by using, selling, offering for sale, and/or importing into the United States at least, for example, the following products (the "Accused Products") that illustrate Defendants' infringement:

**Smartphones** (e.g.,

- Apple (e.g., iPhone 17 / 17 Pro / 17 Pro Max, iPhone Air, iPhone 16 / 16e / 16 Pro/ 16 Max / 16 Plus, iPhone 15 / 15 Pro/ 15 Pro Max / 15 Plus, iPhone 14 / 14 Pro / 14 Pro Max / 14 Plus, iPhone 13 / 13 Pro/ 13 Pro Max / 13 mini, iPhone 12/ 12 Pro / 12 Pro Max/ 12 mini, iPhone 11/ 11 Pro/ 11 Pro Max, iPhone 8 / 8 Plus, iPhone 7 / 7 Plus, iPhone 6s / 6s Plus, iPhone SE (3rd gen, 2022), iPhone SE (2nd gen, 2020), iPhone X/ XS / XS Max / XR);

- Motorola (e.g., Moto G Stylus line (e.g., Moto G stylus 2025, Moto G stylus 5G 2024, Moto g stylus 5G 2023, Moto G stylus 5G 2022, Moto G stylus 5G 2021), Moto G variants

(e.g., Moto G 2025, Moto G Play 2024, Moto G Play 2021), Motorola One / Edge / Razr line (e.g., Motorola Edge 2022, Motorola Razr+ / Razr Ultra 2025, Motorola Razr+ 2024, Motorola Razr / Razr+ 2023, Motorola Razr 5G 2020, Motorola One 5G));

- Google Pixel (e.g., Pixel 4 / 4 XL / 4a 5G, Pixel 5, Pixel 6 / 6a / 6 Pro, Pixel 7 / 7a / 7 Pro, Pixel Fold, Pixel 8 / 8a / 8 Pro, Pixel 9 / 9a / 9 Pro / 9 ProXL, Pixel 10 / 10 Pro / 10 Pro XL);

- LG (e.g., LG K92 5G, LG WING 5G, LG Velvet 5G, LG V60 ThinQ 5G, LG Prime 2, G8 / G8X ThinQ, LG V40 ThinQ, LG Stylo 5+, LG Stylo 4+, LG K40, LG V35 ThinQ, LG Phoenix 4, LG Arena 2);

- Sonim (e.g., Sonim XP8, Sonim XP10, Sonim XP Pro);

- AT&T (e.g., AT&T Motivate Pro 2 5G, AT&T Fusion 5G, AT&T Fusion Z, Calypso);

- Alcatel (e.g., Alcatel Axel);

- Kyocera (e.g., Kyocera DuraForce Pro 2);

- Blackberry (e.g., Blackberry KEYone);

- Microsoft (e.g., Microsoft Surface Duo);

- Razer (e.g., Razer Phone 2);

- And other smartphones which include the infringing features);

**Tablets** (e.g.,

- Apple (e.g., iPad Pro (M5) 11-inch & 13-inch, iPad Pro (M4) 11-inch & 13-inch, iPad Pro (6th gen, 2022) 11-inch & 12.9-inch, iPad Pro (5th gen, 2021) 11-inch & 12.9-inch, iPad Pro (4th gen, 2020) 12.9-inch, iPad Air (M3) 11-inch & 13-inch, iPad Air (M2) 11-inch & 13-inch, iPad Air (M1, 5th gen, 2022), iPad Air (4th gen, 2020), iPad mini (7th gen, 2024),

iPad mini (6th gen, 2021), iPad mini (5th gen, 2019), iPad (A16), iPad (10th gen, 2022), iPad (9th gen, 2021), iPad (8th gen, 2020), iPad (7th gen, 2019));

- Lenovo (e.g., Lenovo 300e Chromebook LTE, Lenovo ThinkPad X13 5G, Lenovo Moto tab);

- Microsoft (e.g., Microsoft Surface Go 2, Microsoft Surface Go 3);

- TCL (e.g., TCL Tab 8 SE);

- And other tablets which include the infringing features);

**Earbuds / Headphones** (e.g.,

- Apple (e.g., AirPods 4, AirPods (3rd gen), AirPods (2nd gen), AirPods Pro 3, AirPods Pro 2, AirPods Pro (1st gen), AirPods Max);

- AT&T Essentials (e.g., Essentials Wireless On-Ear Headphones, Essentials True Wireless Ultra Earbuds, Essentials Touch Screen LED True Wireless Earbuds, Essentials True Wireless Pro Earbuds);

- Bose (e.g., Bose Quiet Comfort Ultra Bluetooth Headset, Bose Ultra Open Bluetooth Headset);

- Google Pixel (e.g., Pixel Buds Pro, Pixel Buds Pro 2, Pixel Buds A-Series, Pixel Buds 2a);

- LG (e.g., LG Tone Free FN4 True Wireless Earbuds, LG Tone Ultra Alpha Headset);

- JLab (e.g., JBuds Air Sport True Wireless Earbuds, Studio Pro Wireless Over-Ear Headphones, JBuds Mini True Wireless Earbuds, JBuds Air True Wireless Earbuds, JBuds Air ANC True Wireless Earbuds, JBuds Work Wireless Headphones, Studio ANC On-Ear Wireless Headphones, Play Gaming Wireless Earbuds, Play Gaming Wireless Headset, Go Work Wireless Headphones, Work Buds True Wireless Earbuds, Audio JBuds Air True Wireless Earbuds);

- Beats (e.g., Fit Pro True Wireless Earbuds, Studio Buds - True Wireless Noise Cancelling Earphones, Powerbeats High Performance Wireless Earphones, Powerbeats Pro 2 earbud, Solo 4 Wireless Over-Ear Headphones, Solo Buds + True Wireless Earbuds, Powerbeats Fit – Wireless Noise-Cancelling Earbuds, Flex – All-Day Wireless Earphones, Studio Pro Wireless Headphones);

- Skullcandy (e.g., Skullcandy Indy Evo Wireless Earbuds);

- Plantronics (e.g., Plantronics BackBeat Pro 5100 True Wireless Earbuds, Plantronics Voyager 5200 Bluetooth Headset);

- And other earbuds / headphones which include the infringing features);

**Speakers / Smart-Speakers** (e.g.,

- Speck (e.g., Speck Gemtones Infinity Mini Speaker, Speck Gemtones Infinity Max Speaker, Speck Gemtones Infinity Mid Speaker);

- AT&T Essentials (e.g., Essentials Portable Wireless 50W Bluetooth Speaker, Essentials Portable Wireless 15 W Small Bluetooth Speaker, Essentials Portable Wireless Waterproof Bluetooth Speaker, Essentials Retro 15W Bluetooth Speaker, Essentials Retro 40W Bluetooth Speaker, Essentials Retro 80W Bluetooth Speaker, Essentials Clip Bluetooth Speaker, Essentials 80W Karaoke Bluetooth Speaker with two Wireless Microphones + Stand, Essentials 120W Karaoke Bluetooth Speaker with two Wireless Microphones + Stand, Essentials 5W Mini Bluetooth Speaker, Essentials Portable Wireless 40W Bluetooth Speaker with Strap);

- Ultimate Ears (e.g., Ultimate Ears Blast Wifi Speaker, Ultimate Ears Wonderboom Speaker, Ultimate Ears Wonderboom 2 Speaker, Ultimate Ears Megaboom 3 Speaker Bundle Pack, Ultimate Ears Boom 3 Speaker);

- TYLT (e.g., TYLT Mini Boom Bluetooth Speaker, TYLT Salt and Pepr Bluetooth Speaker);

- Bose (e.g., Bose SoundLink Max Bluetooth Speaker, Bose SoundLink Flex Bluetooth Speaker);

- Altec Lansing (e.g., HydraMini Bluetooth Speaker, HydraBlast Bluetooth Speaker, HydraMotion Bluetooth Speaker, SoundRover Bluetooth Speaker);

- ION (e.g., ION Audio Meeting Mate Bluetooth Speaker);

- And other speakers /smart-speakers which include the infringing features).

46.     Defendants' acts of infringement have caused damage to CC.  CC is entitled to recover from Defendants the damages sustained by CC as a result of Defendants' wrongful acts in an amount subject to proof at trial.

47.     Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Defendants' willful infringement of the Patents-in-Suit.

48.     For each count of infringement listed below, CC incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '552 PATENT

49.     CC incorporates herein the allegations made in paragraphs 1-48.

50.     Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '552 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

51.    An exemplary claim chart demonstrating Defendants' infringement of the '552 Patent is attached as Exhibit G and incorporated herein by reference.

52.    Defendants have knowledge of the '552 Patent and of its infringement of the '552 Patent at least through service of the Complaint.

53.    On information and belief, despite Defendants' knowledge of the '552 Patent and of its infringement of the '552 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '552 Patent.

54.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '552 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '552 Patent via at least their use of the Accused Products.

55.    Since issuance of the '552 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '552 Patent or that would otherwise require marking under 35 U.S.C. § 287.

56.    CC may recover pre-suit damages for Defendants' infringement of the '552 Patent under 35 U.S.C. § 287.

57.    As a result of Defendants' infringement of the '552 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

58.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '552 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '552 Patent. Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '552 Patent by using the

Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '552 Patent, including, for example, Claim 1 of the '552 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '552 Patent and with the knowledge that the induced acts constitute infringement.  Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '552 Patent.

59.     Defendants have also indirectly infringed by contributing to the infringement of the '552 Patent.  Defendants have contributed to the direct infringement of the '552 Patent by its customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '552 Patent, including, for example, claim 1 of the '552 Patent.  The special features include, for example, the selective locking system recited in claim 1, wherein the user may prevent any user input on the portable media player when user locks it.  The special features constitute a material part of the invention of one or more of the claims of the '552 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

60.     Defendants' direct and indirect infringement of the '552 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT II – INFRINGEMENT OF THE '087 PATENT

61.     CC repeats and re-alleges the allegations in Paragraphs 1-60 as though fully set forth in their entirety.

62.     Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '087 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

63.     An exemplary claim chart demonstrating Defendants' infringement of the '087 Patent is attached as Exhibit H and incorporated herein by reference.

64.     Defendants have knowledge of the '087 Patent and of its infringement of the '087 Patent at least through service of the Complaint.

65.     On information and belief, despite Defendants' knowledge of the '087 Patent and of its infringement of the '087 Patent, Defendants have not sought to remedy its infringement or sought to identify any good faith belief as to why they do not infringe the '087 Patent.

66.     On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '087 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '087 Patent via at least their use of the Accused Products.

67.     Since issuance of the '087 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '087 Patent or that would otherwise require marking under 35 U.S.C. § 287.

68.     CC may recover pre-suit damages for Defendants' infringement of the '087 Patent under 35 U.S.C. § 287.

69.     As a result of Defendants' infringement of the '087 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

70.     Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '087 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '087 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '087 Patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '087 Patent, including, for example, Claim 1 of the '087 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '087 Patent and with the knowledge that the induced acts constitute infringement.  Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '087 Patent.

71.     Defendants have also indirectly infringed by contributing to the infringement of the '087 Patent.  Defendants have contributed to the direct infringement of the '087 Patent by its customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '087 Patent, including, for example, claim 1 of the '087 Patent.  The special features include, for example, the portable media

player system recited in claim 1, wherein the illumination component indicates a communication state of the wireless connection. The special features constitute a material part of the invention of one or more of the claims of the '087 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

72.     Defendants' direct and indirect infringement of the '087 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT III – INFRINGEMENT OF THE '446 PATENT

73.     CC repeats and re-alleges the allegations in Paragraphs 1-72 as though fully set forth in their entirety.

74.     Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '446 Patent, including, for example, claim 8, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

75.     An exemplary claim chart demonstrating Defendants' infringement of the '446 Patent is attached as Exhibit I and incorporated herein by reference.

76.     Defendants have knowledge of the '446 Patent and of its infringement of the '446 Patent at least through the service of this Complaint.

77.     On information and belief, despite Defendants' knowledge of the '446 Patent and of its infringement of the '446 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '446 Patent.

78.     On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 8 of the '446 Patent. For example, Defendants offered its customers extensive customer support and instructions that instructed and encouraged their

customers to infringe the '446 Patent via at least their use of the Accused Products.

79.    Since issuance of the '446 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '446 Patent or that would otherwise require marking under 35 U.S.C. § 287.

80.    CC may recover pre-suit damages for Defendants' infringement of the '446 Patent under 35 U.S.C. § 287.

81.    As a result of Defendants' infringement of the '446 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

82.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '446 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '446 Patent. Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '446 Patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '446 Patent, including, for example, Claim 8 of the '446 Patent. Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendants performed these steps, which constitute induced infringement with the knowledge of the '446 Patent and with the knowledge that the induced acts constitute infringement. Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '446 Patent.

83.     Defendants have also indirectly infringed by contributing to the infringement of the '446 Patent. Defendants have contributed to the direct infringement of the '446 Patent by their customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '446 Patent, including, for example, claim 8 of the '446 Patent. The special features include, for example, the input mechanism recited in claim 8, including the use of that mechanism to make functions of the device available based on authentication performed via the mechanism. The special features constitute a material part of the invention of one or more of the claims of the '446 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

84.     Defendants' direct and indirect infringement of the '446 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

### COUNT IV – INFRINGEMENT OF THE '699 PATENT

85.     CC repeats and re-alleges the allegations in Paragraphs 1-84 as though fully set forth in their entirety.

86.     Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '699 Patent, including, for example, claim 10, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

87.     An exemplary claim chart demonstrating Defendants' infringement of the '699 Patent is attached as Exhibit J and incorporated herein by reference.

88.     Defendants have knowledge of the '699 Patent and of its infringement of the '699

Patent at least through the service of this Complaint.

89.    On information and belief, despite Defendants' knowledge of the '699 Patent and of its infringement of the '699 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '699 Patent.

90.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 10 of the '699 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '699 Patent via at least their use of the Accused Products.

91.    Since issuance of the '699 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '699 Patent or that would otherwise require marking under 35 U.S.C. § 287.

92.    CC may recover pre-suit damages for Defendants' infringement of the '699 Patent under 35 U.S.C. § 287.

93.    As a result of Defendants' infringement of the '699 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

94.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '699 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '699 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '699 Patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '699 Patent, including, for example, Claim 10 of the '699 Patent.  Such

steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendants performed these steps, which constitute induced infringement with the knowledge of the '699 Patent and with the knowledge that the induced acts constitute infringement. Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '699 Patent.

95.     Defendants have also indirectly infringed by contributing to the infringement of the '699 Patent. Defendants have contributed to the direct infringement of the '699 Patent by their customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '699 Patent, including, for example, claim 10 of the '699 Patent. The special features include, for example, providing audio signals at different volume levels, wherein the second audio volume level is non-intrusively lower than the first audio volume level initially, but increases to a discernable volume level higher than the first audio volume level until the user responds to the second audio signal. The special features constitute a material part of the invention of one or more of the claims of the '699 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

96.     Defendants' direct and indirect infringement of the '699 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT V – INFRINGEMENT OF THE '003 PATENT

97.     CC repeats and re-alleges the allegations in Paragraphs 1-96 as though fully set forth in their entirety.

98.     Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '003 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

99.     An exemplary claim chart demonstrating Defendants' infringement of the '003 Patent is attached as Exhibit K and incorporated herein by reference.

100.     Defendants have knowledge of the '003 Patent and of its infringement of the '003 Patent at least through the service of this Complaint.

101.     On information and belief, despite Defendants' knowledge of the '003 Patent and of its infringement of the '003 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '003 Patent.

102.     On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '003 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '003 Patent via at least their use of the Accused Products.

103.     Since issuance of the '003 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '003 Patent or that would otherwise require marking under 35 U.S.C. § 287.

104.     CC may recover pre-suit damages for Defendants' infringement of the '003 Patent under 35 U.S.C. § 287.

105.    As a result of Defendants' infringement of the '003 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

106.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '003 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '003 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '003 Patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '003 Patent, including, for example, Claim 1 of the '003 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '003 Patent and with the knowledge that the induced acts constitute infringement.  Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '003 Patent.

107.    Defendants have also indirectly infringed by contributing to the infringement of the '003 Patent.  Defendants have contributed to the direct infringement of the '003 Patent by their customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '003 Patent, including, for example, claim 1 of the '003 Patent.  The special features include, for example, serving data or

applications from mobile devices.  The special features constitute a material part of the invention of one or more of the claims of the '003 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

108.    Defendants' direct and indirect infringement of the '003 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT VI – INFRINGEMENT OF THE '703 PATENT

109.    CC repeats and re-alleges the allegations in Paragraphs 1-108 as though fully set forth in their entirety.

110.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '703 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

111.     An exemplary claim chart demonstrating Defendants' infringement of the '703 Patent is attached as Exhibit L and incorporated herein by reference.

112.    Defendants have knowledge of the '703 Patent and of its infringement of the '703 Patent at least through the service of this Complaint.

113.    On information and belief, despite Defendants' knowledge of the '703 Patent and of its infringement of the '703 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '703 Patent.

114.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '703 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '703 Patent via at least their use of the Accused Products.

115.    Since issuance of the '703 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '703 Patent or that would otherwise require marking under 35 U.S.C. § 287.

116.    CC may recover pre-suit damages for Defendants' infringement of the '703 Patent under 35 U.S.C. § 287.

117.    As a result of Defendants' infringement of the '703 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

118.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '703 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '703 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '703 Patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '703 Patent, including, for example, Claim 1 of the '703 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '703 Patent and with the knowledge that the induced acts constitute infringement.  Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '703 Patent.

119.    Defendants have also indirectly infringed by contributing to the infringement of the '703 Patent.  Defendants have contributed to the direct infringement of the '703 Patent by their customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '703 Patent, including, for example, claim 1 of the '703 Patent.  The special features include, for example, sending image messages from one mobile device to another.  The special features constitute a material part of the invention of one or more of the claims of the '703 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

120.    Defendants' direct and indirect infringement of the '703 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

CC requests that the Court find in its favor and against Defendants, and that the Court grant CC the following relief:

a.    Judgment that one or more claims of the Patents-in-Suit have been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b.    Judgment that Defendants account for and pay to CC all damages to and costs incurred by CC because of Defendants' infringing activities and other conduct complained of herein;

c.    Judgment that Defendants' infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.    Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e.    That this Court declare this an exceptional case and award CC its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: December 23, 2025          Respectfully submitted,

By: /s/ *Fred I. Williams*
Fred I. Williams
Texas State Bar No. 07034855
Lea N. Brigtsen
Texas State Bar No. 24054504
Stephen R. Dartt
Texas State Bar No. 24042370
WILLIAMS SIMONS & LANDIS PC
The Littlefield Building
106 East Sixth Street, Suite 900-168
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
lbrigtsen@wsltrial.com
sdartt@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PC
1735 Market Street, Suite 125, #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Cloud Controls LLC*